AMERICAN METAL CO., Limited, v. SAN ROBERTO MINING CO. (No. 790.)

(Court of Civil Appeals of Texas. El Paso. March 21, 1918. Rehearing Denied April 11, 1918.)

1. WITNESSES ⊚⟝344(4) — IMPEACHMENT — BUSINESS MISDEMEANORS.

Since under Pen. Code 1911, arts. 577–580, betting on horse races is a misdemeanor only, fact that witness was interested in operating race track partly supported by betting on horse races was not admissible to impeach him, not being felonious, nor of a vicious or degraded nature.

2. PRINCIPAL AND AGENT ⊚⟝20(1), 120(1)— RELATIONSHIP—SCOPE OF AUTHORITY.

The fact of an agent's authority and its scope may be shown by circumstances.

3. PRINCIPAL AND AGENT ⊚⟝99 — DELEGATION OF POWERS.

The power of an agent to delegate his authority, like any other power, may be implied from . those powers, customs, and usages positively established by the evidence.

4. TRIAL ⊚⟝352(5) — SUBMISSION OF QUESTIONS—ASSUMPTION OF FACTS.

It is not error for the court in submission of issues to assume as a fact a matter not contested.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by the San Roberto Mining Company against the American Metal Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Julian B. Beaty, of New York City, E. F. Harris, of Galveston, and U. S. Goen and R. C. Walshe, both of El Paso, for appellant. Jones, Jones, Hardie & Grambling, of El Paso, for appellee.

Findings of Fact.

HIGGINS, J. On March 27, 1915, C. A. Bentley, "in representation of the San Roberto Mining Company," as seller, and H. A. Houser, "in representation of Cia. Minera y Compradora de Metales Mexicana," as buyer, entered into a written contract, by the terms whereof the seller agreed to sell and deliver all carbonates and silicates of zinc then existing on the property of the seller, or at its shipping station, and all other carbonates and silicates of zinc ore produced by the mine during the life of the contract, and to sell and deliver to no one else, except the buyer, during the life of the contract. The buyer agreed to purchase and receive the same under the conditions stipulated. The contract was to remain in effect until the seller had delivered at least 10,000 dry metric tons of ore. This contract was thus signed: "C. A. Bentley, for the San Roberto Mining Company. H. A. Houser, for Cia. Minera y Compradora de Mexicana."

Appellee, San Roberto Mining Company, brought this suit to recover damages for the breach of the contract against appellant, American Metal Company, Limited, upon the theory that it was the undisclosed principal of the buyer in said contract. A condensed statement of the facts material to a consideration of this appeal as found by the jury upon special issues is as follows: That Ernest Villareal, agent of the American Metal Company prior to the execution and delivery of above-mentioned contract, authorized H. A. Houser, or the company managed by him, to wit, the Compania Minera y Compradora de Metales Mexicana, to contract to buy for said American Metal Company at a stated price per ton so much of the output of the San Roberto Mining Company as he could obtain; that it was in the actual or apparent scope of the authority of Ernest Villareal, agent of the American Metal Company, to authorize Houser, or the Compania Minera y Compradora de Metales Mexicana, to contract to purchase on account of the American Metal Company zinc ores from the San Roberto Mining Company, to the extent of 10,000 tons; that Houser, or said Compania Minera y Compradora de Metales Mexicana, in behalf of the American Metal Company, in pursuance of the authority aforesaid, did execute said contract; that the San Roberto Mining Company would have delivered 6,000 tons under said contract to the American Metal Company had not its manager been notified not to deliver said ore. There are other findings, but it is unnecessary to state the same.

Ernest (E. T.) Villareal was an agent and representative of the appellant. He is not to be confused with Edwin (E. M.) Villareal, who was manager of another corporation frequently referred to in the evidence.

Upon the findings of the jury, a judgment was rendered against the American Metal Company, Limited, and it appeals.

Conclusions of Law.

[1] 1. H. A. Houser was a witness for plaintiff. Upon cross-examination he testified that his occupation was that of miner. Error is assigned to the refusal of the court to permit defendant to develop the further fact that the witness was interested in the business of operating the race track at Tia Jua-

na, Republic of Mexico, which was partially supported by betting on horse races. This was offered for the purpose of affecting the credibility of the witness. It would not have shown that the witness was engaged in an occupation of a degraded or vicious nature. Railway Co. v. Keller, 33 Tex. Civ. App. 358, 76 S. W. 801; Moody v. Rowland, 46 Tex. Civ. App. 412, 102 S. W. 918; Hitson v. Hurt, 45 Tex. Civ. App. 360, 101 S. W. 293.

Articles 577 to 580 of the Penal Code make pool selling, bookmaking, and betting on horse racing misdemeanors. Such things are not felonious, and are not offenses which involve moral turpitude. Miller v. State, 67 Tex. Cr. R. 654, 150 S. W. 635. The exclusion of the evidence presents no error.

2. The controlling question in this case relates to the sufficiency of the evidence to support the finding that Ernest Villareal was authorized by the appellant to authorize Houser, or the company which he managed, Compania Minera y Compradora de Metales Mexicana, to enter into the contract upon which the suit is based. That Villareal was the authorized agent to purchase ore is undisputed. Villareal himself testified that he was the ore buyer for appellant, and had been for the past eight years; that he bought ores for it in the United States, Mexico, South America, and Europe; that he thought he was in charge of the zinc department of appellant in 1913; that he thought he was in charge of the zinc ore purchasing department of appellant in 1913; that he held practically the same position in February, March, April, May, June, and July of 1915.

[2, 3] The evidence bearing upon the issue is largely circumstantial, and we will not undertake to detail the same. The fact of his agency and the extent of his authority may be shown by circumstances. Sargent v. Barnes, 159 S. W. 373. The evidence, considered as a whole, in our opinion, is sufficient to raise the presumption that Villareal had authority to authorize Houser, or the company which Houser managed, to enter into the contract of March 27th. It is true Villareal denied his authority, but the prima facie case made by the evidence was sufficient to take the case to the jury. They were at liberty to disbelieve Villareal, and upon the face of this record we are not at all prepared to set aside their findings, or to hold that the evidence was insufficient to take the issue to the jury. The power of an agent to delegate his authority, like any other power, may be implied from those powers, customs, and usages positively established by the evidence. It is actual authority, circumstantially shown.

In support generally of the conclusions contained in this paragraph see Oakes v. Cattaraugus Water Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544; Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 22

Sup. Ct. 240, 46 L. Ed. 373; Barber v. Stronberg Co., 81 Neb. 517, 116 N. W. 158, 18 L. R. A. (N. S.) 680, 129 Am. St. Rep. 703; Parrott v. Mexican Central Railway Co., 207 Mass. 184, 93 N. E. 592, 34 L. R. A. (N. S.) 261; G. C. & S. F. v. Huyett; 89 S. W. 1118; Mechem on Agency, § 64; Tabet v. Powell, 39 Tex. Civ. App. 465, 88 S. W. 273; Holmes v. Tyner, 179 S. W. 892; Murphy v. Knights of Columbus, 155 Mo. App. 649, 135 S. W. 448; Sargent v. Barnes, 159 S. W. 373; Olcott v. Gabert, 86 Tex. 121, 23 S. W. 987; Pullman Palace Car Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 626; Mechem on Agency, §§ 106, 193, 194, 197, 280, 311, 365, 366, 367, 413, and 946.

3. Under the evidence in this case the price, terms of payment, and every matter involving personal trust and discretion under the contract sued upon were determined by Villareal. The contract executed by Houser was in accordance with the decision of Villareal in respect to such matters. It does not appear that Houser himself undertook to exercise any authority involving such trust and discretion. He merely executed a contract, the terms of which were fixed by Villareal.

[4] 4. It is objected to the first and second submitted questions that they were upon the weight of the evidence in assuming that Ernest Villareal was an agent of defendant, and had authority to authorize Houser or his company to execute the contract sued upon. The evidence is undisputed that he was an agent and it was therefore proper for the court to so assume. The extent of his authority was not assumed, but was submitted.

5. The authority of Villareal to delegate to Houser authority to make the contract is sufficiently pleaded, and the sufficiency of the evidence upon the issue of Villareal's authority is disposed of by what has been previously said.

Upon the foregoing conclusions it follows that none of the assignments are well taken.

Affirmed.

